Filed 3/6/25  P. v. Valenzuela CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331848 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA226098 |
| v. | |
| SANTOS VALENZUELA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, a jury convicted Santos Valenzuela of the attempted murder of Felix Carillo and Francisco Rascon. The jury found the attempted murders were committed willfully, deliberately, and with premeditation. The jury also found true a gang allegation as well as an allegation that a principal personally and intentionally discharged a firearm in the commission of the crimes. Valenzuela now appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] The trial court concluded Valenzuela had not made a prima facie showing of eligibility for resentencing relief because he was not convicted under the natural and probable consequences doctrine. Valenzuela contends the trial court erred because (1) the trial court instructed the jury that all principals are "equally guilty," and (2) the Legislature did not intend to limit resentencing eligibility for defendants convicted of attempted murder to those convicted under the natural and probable consequences doctrine. We reject these contentions and find the record of conviction conclusively establishes Valenzuela's ineligibility for resentencing as a matter of law. We therefore affirm the trial court's denial of his petition.

**FACTS AND PROCEDURAL BACKGROUND**

1. ***Valenzuela is the driver in a shooting at a car in which one victim is shot in the head***

We refer to the facts from Valenzuela's trial only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) We previously granted Valenzuela's request for judicial

---

[1] References to statutes are to the Penal Code. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

notice of "[t]his Court's May 9, 2022 remittitur and accompanying opinion in *People v. Valenzuela* [(Jan. 7, 2022], B309402[)] [nonpub. opn.]" (*Valenzuela II*). That opinion, in turn, summarized the facts set forth in *People v. Valenzuela* (Nov. 10, 2005, B175087) [nonpub. opn.] (*Valenzuela I*), Valenzuela's direct appeal from his conviction.

During the early morning of November 18, 2001, Felix Carillo was a passenger in a car his friend Francisco Rascon was driving. While stopped at a red light at the intersection of Indiana and Whittier, Carillo saw a white Chevy Blazer traveling eastbound on Whittier. The Blazer made a U-turn and stopped on Indiana facing in the opposition direction. A driver and a passenger were in the Blazer. Carillo saw the driver's face but not the passenger's. (*Valenzuela II*.)

The passenger got out of the car. He was holding a gun. Carillo told Rascon to drive away. Shots were fired, and the front and rear windows were shattered. Carillo was shot in the back of his head. Rascon drove Carillo to a hospital where he received treatment. (*Valenzuela II*.)

The next day, Valenzuela asked a woman if she wanted to buy his white Chevy Blazer. She agreed to buy it for $100. (*Valenzuela II*.)

A detective assigned to investigate the case read the police report and recalled a field interview he'd conducted with Valenzuela about a month earlier. Valenzuela had been driving a car that matched the description of the Chevy Blazer used in the shooting. In the field interview, Valenzuela admitted his gang membership and his moniker of "Trigger." Valenzuela made the same admissions to another deputy a few days after the field interview with the detective. In that encounter, Valenzuela also had been driving a white Chevy Blazer. (*Valenzuela II*.)

The detective prepared a six-pack photo array and showed it to Carillo. Carillo identified Valenzuela as the driver of the Blazer involved in the November 18 shooting. (*Valenzuela II*.)

**2.    *The charges, trials, verdicts, and sentence***

The People charged Valenzuela with the attempted murder of Carillo and Rascon (counts 1 and 2, respectively). The People alleged Valenzuela committed the attempted murders willfully, deliberately, and with premeditation. The People also alleged Valenzuela committed the crimes for the benefit of, at the direction of, and in association with a criminal street gang and that, in the commission of the crimes, a principal personally and intentionally used and discharged a firearm. The People alleged Valenzuela had a prior strike for robbery.[2]

The trial court instructed the jury with (among other instructions) CALJIC Nos. 3.00 (Principals–Defined), 3.01 (Aiding and Abetting–Defined), 8.66 (Attempted Murder), and 8.67 (Attempted Murder–Willful, Deliberate, and Premeditated). The court did not give the jury CALJIC No. 3.02 (Principals–Liability for Natural and Probable Consequences).

The jury convicted Valenzuela on both counts and found all of the allegations true. In a court trial, the court found Valenzuela's priors true. The trial court sentenced Valenzuela to 73 years to life, calculated as: on count 1, seven years to life, doubled because of the strike, plus 20 years for the firearm enhancement, plus five years for the serious felony prior

---

[2]    In the same information, the People charged Valenzuela with the attempted murder of John Mendoza about two weeks after the crimes against Carillo and Rascon. In the attempted murder of Mendoza, the People alleged Valenzuela had personally and intentionally discharged a firearm. The record does not reflect what happened to this third count.

4

(39 years); and, on count 2, seven years to life, doubled, plus 20 years for the firearm enhancement (34 years), to be served consecutively to count 1. The court imposed and stayed additional terms for the firearm and gang enhancements and, as to count 2, for the serious felony prior.

Another panel of this court affirmed Valenzuela's conviction. (*Valenzuela I*.)

### 3. *Valenzuela's petition for resentencing*

In August 2019 Valenzuela, representing himself, filed a form petition for resentencing under section 1172.6. Valenzuela checked the subboxes to box 5 on the form stating he "was not the actual killer," he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree," and he "was not a major participant in the felony **or** [he] did not act with reckless indifference to human life during the course of the . . . felony." Valenzuela also checked boxes 7 (stating there had "been a prior determination by a court or jury that [he] was not a major participant and/or did not act with reckless indifference to human life") and 4, asking the court to appoint counsel for him. Valenzuela did not check any other boxes on the form.

Notwithstanding the inadequacy of Valenzuela's petition, the court treated the petition as if it complied with then-section 1170.95. On November 6, 2020, the court denied the petition, finding Valenzuela ineligible for relief because then-section 1170.95 did not apply to convictions for attempted murder. (*Valenzuela II*.)

Valenzuela appealed. While his appeal was pending, the Governor approved Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) which amended the statute to permit individuals convicted of attempted murder under the natural and probable consequences doctrine to seek relief under the

5

statute.  (Stats. 2021, ch. 551, § 1(a).)  Accordingly, we reversed the order denying the petition and remanded the matter for further proceedings.  (*Valenzuela II*.)

Back in the trial court, the prosecution filed a response to Valenzuela's petition.  The prosecution contended Valenzuela is not eligible for resentencing because he was not tried or convicted under the natural and probable consequences doctrine but rather as a direct aider and abettor.  The prosecution attached the jury instructions from Valenzuela's trial as well as the reporter's transcript of the court reading the instructions to the jury.

Valenzuela filed a reply to the prosecution's response.  Valenzuela acknowledged "the natural and probable consequences doctrine was not employed during [his] trial," but he asserted "other instructions permitted the jury to impute malice based on intent to aid and abet a different crime."  "Accordingly," he contended, he had "made a prima facie showing."  Valenzuela attached to his reply part of the reporter's transcript of the prosecutor's closing argument in which the prosecutor discussed the "equally guilty" language in CALJIC No. 3.00.[3]

The trial court issued an order to show cause, stating it would "hold a hearing to determine whether the petitioner was convicted of attempted murder under the natural and probable consequences doctrine and is therefore eligible for relief under

---

[3]     CALJIC No. 3.00, as read to Valenzuela's jury, stated, "Persons who are involved in [committing] [or] [attempting to commit] a crime are referred to as principals in that crime.  Each principal, regardless of the extent or manner of participation[,] is equally guilty.  Principals include: [¶] 1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or [¶] 2. Those who aid and abet the [commission] [or] [attempted commission] of the crime."

6

Penal Code § 1172.6." On May 26, 2023, counsel appeared before the court. The prosecution filed a "supplemental brief" arguing that Valenzuela had failed to make a prima facie case—and therefore no evidentiary hearing was necessary—because the natural and probable consequences theory was "totally absent from the [jury] instructions."

On June 23, 2023, the trial court issued a Memorandum of Decision denying Valenzuela's petition. The court quoted from *Valenzuela II*. The court stated,

> "After a reconsideration of the moving papers and the court file in this case, the court finds that the Petitioner is not entitled to relief as a matter of law because the Petitioner was not convicted of the crime of attempted murder under a theory of natural and probable consequences. The jury in the Petitioner's case was not instructed on a theory of natural and probable consequences, therefore he was not convicted under that theory and cannot make a prima facie showing that he is eligible for relief under Penal Code Section 1172.6. [¶] The Petition in this case is denied as a matter of law."

## DISCUSSION

### 1. *Section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for murder liability and limited the scope of the felony murder rule. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Senate Bill 1437 also provided an avenue for a person convicted

7

under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law. (*People v. Strong* (2022) 13 Cal.5th 698, 708–709; *Lewis*, at pp. 959–960.) Senate Bill 775, effective January 1, 2022, extended resentencing eligibility to individuals convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1(a).) Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).)

If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*Lewis*, *supra*, 11 Cal.5th at pp. 962–963; see § 1172.6, subd. (b)(1)(A), (b)(3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he is entitled to relief. (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, the court takes the petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his factual allegations were proved. If so, the court must issue an order to show cause. (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Curiel* (2023) 15 Cal.5th 433, 463–464.) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463–464; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court

should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)  But if the record of conviction contains facts refuting the allegations made in the petition, the trial court is justified in rejecting them. (*Eynon*, at p. 975; see *Lewis*, at p. 971.)

The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which may not take place until after an order to show cause issues.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted on other grounds Sept. 23, 2020, S263939 and held for *Lewis*, review dismissed Nov. 17, 2021, opinion citable to the extent not inconsistent with *Lewis*; see *People v. Estrada* (2022) 77 Cal.App.5th 941, 943, 946 [jury instructions showed trial court never instructed jury on natural and probable consequences doctrine; summary denial of petition affirmed].)  The verdicts are also part of the record of conviction.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 55–56 [affirming summary denial of petition; jury instructions and verdict irrefutably established as a matter of law that defendant was ineligible for resentencing].)

We independently review the denial of a resentencing petition at the prima facie stage.  (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238.)

**2.** **_Valenzuela is ineligible for resentencing as a matter of law_**

Section 1172.6 authorizes "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine" to petition for resentencing.  (§ 1172.6, subd. (a).)

Valenzuela concedes his jury was not instructed on the natural and probable consequences doctrine. Accordingly, he was not "convicted . . . under the natural and probable consequences doctrine," and under the statute's plain language he is ineligible for relief as a matter of law. (*Ibid.* See *Coley, supra,* 77 Cal.App.5th at p. 548 ["Section 1170.95 applies by its terms only to attempted murders based on the natural and probable consequences doctrine."].)

Valenzuela contends, however, that "he was entitled to relief under [Senate Bill] 775's language, 'or other theory under which malice is imputed to a person based solely on that person's participation in a crime.'" Even though this contention ignores the plain language and explicit phrasing of the statute,[4] Valenzuela argues (1) the trial court's instruction of the jury with the former version of CALJIC No. 3.00, which included

_____

[4] Section 1172.6, subdivision (a), states, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition. Plainly, this language lists three types of eligible petitioners: (1) individuals convicted of murder under one of three theories (a) felony murder, (b) the natural and probable consequences doctrine, or (c) any other theory under which malice is imputed to him based solely on his participation in a crime; (2) individuals convicted of attempted murder under the natural and probable consequences doctrine; and (3) individuals convicted of manslaughter. (§ 1172.6, subd. (a).) Had the Legislature wanted to include individuals convicted of attempted murder under other theories—including a " 'theory under which malice is imputed to a person based solely on [his] participation in a crime' "—it could have done so.

10

the phrase " 'equally guilty,' " "focused only on the express malice of the perpetrator"; and (2) section 1172.6's limitation of relief for individuals convicted of attempted murder to those convicted under the natural and probable consequences doctrine "create[s] a new inequality between murder and attempted murder defendants" that the Legislature didn't intend. Both of these arguments are meritless.

Our Supreme Court has explained that the former version of CALJIC No. 3.00 "generally stated a correct rule of law. All principals, including aiders and abettors, are 'equally guilty' in the sense that they are all criminally liable." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) Nevertheless, the high court cautioned the instruction's use of the phrase "equally guilty" could be "misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*Ibid.*)

There was no such risk of the jury being misled here. Valenzuela has not suggested any crime of which the jury could have found him—the driver—guilty that differed from the crime the shooter committed. The jury instructions and verdicts demonstrate that Valenzuela was prosecuted and convicted as a direct aider and abettor. It is well settled that Senate Bill 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at pp. 847–848.)

Valenzuela's jury convicted him of attempted murder and found true the allegation that the attempted murders were willful, deliberate, and premeditated. The "equally guilty" language in CALJIC No. 3.00 did not allow the jury to find Valenzuela guilty without considering his own mental state. (See *People v. Johnson* (2016) 62 Cal.4th 600, 638–641 [rejecting the argument that CALCRIM No. 400's "equally guilty" language

11

allows a jury to convict an aider and abettor of first degree murder based on the perpetrator's culpability without considering the aider and abettor's mental state].)[5]

---

[5]     Valenzuela cites *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*).  In *Lee*, our colleagues in Division One held a defendant's murder conviction under the provocative act doctrine did not render him ineligible for resentencing as a matter of law because, when he was tried, the instructions permitted a jury to convict him "solely on the malicious provocative acts of his confederates in the underlying robbery, without any finding as to [his] mental state."  (*Id*. at p. 1169.)  The *Lee* court went on, however, to hold that Lee was not eligible for relief on his conviction for *attempted* murder because "the attempted murder instruction required that the perpetrator of the attempted murder 'harbor[ ] express malice aforethought, namely, a specific intent to kill unlawfully another human being.' "  (*Id*. at p. 1191.)  Assuming the jury convicted Lee for aiding and abetting an attempted murder (rather than as a direct perpetrator), "the jury necessarily found Lee had 'knowledge of the unlawful purpose of the perpetrator,' that being 'a specific intent to kill unlawfully another human being,' and aided and abetted 'with the intent or purpose' of committing the crime.  Thus, the jury necessarily found Lee intended to aid and abet an unlawful killing, that is, that Lee had an intent to kill, the very definition of express malice."  (*Ibid*.)  The same is true here.

The *Lee* court also distinguished *People v. Langi* (2022) 73 Cal.App.5th 972, a case Valenzuela cites here as well.  The *Lee* court noted the *Langi* court "took issue with jury instructions for aiding and abetting second degree implied malice murder," holding those instructions "potentially permitted juries to convict aiders and abettors without a finding of malice."  (*Lee*, *supr*a, 95 Cal.App.5th at p. 1191.)  Here, as in *Lee*, the defendant has "not explain[ed] how the jury instructions in his case are analogous to those in *Langi*."  (*Ibid*.)  In *Langi*, "the concern centered on the fact that the direct perpetrator of an implied malice murder . . . need not harbor an intent to kill."  (*Lee*, at p. 1191, citing *Langi*,

Nor are we persuaded that the Legislature's plain language was not what it intended. The Legislature phrased the language of Senate Bill 775 as it did for a good reason: As we have explained, the perpetrator of an attempted murder must have the specific intent unlawfully to kill another human being. (See *People v. Mumin* (2023) 15 Cal.5th 176, 190 ["[A]ttempted murder requires a specific intent to kill." (italics omitted)]; *People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing].) "An intent to kill is the equivalent of express malice, at least where there is no question of justification or excuse, and by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice . . . ." (*Coley*, *supra*, 77 Cal.App.5th at pp. 547–548.) This requirement of a specific intent to kill applies equally to a defendant convicted of attempted murder as a direct aider and abettor. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [the person guilty of attempted murder as an aider and abettor must intend to kill].) In short, apart from the natural and probable consequences doctrine—which our Legislature now has abolished—a person cannot be convicted of attempted murder on any theory under which malice is "imputed" to him.[6]

---

at p. 982.) Here, as in *Lee*, "[t]hat concern is not present under the instructions given . . . which required the perpetrator of the attempted murder to 'harbor[ ] express malice aforethought, namely, a specific intent to kill . . . .' " (*Lee*, at p. 1191.)

[6]     Because *attempted* murder requires a specific intent to kill, which is express malice, the two *murder* cases Valenzuela cites—

13

In sum, the record of conviction demonstrates the jury convicted Valenzuela as the direct aider and abettor of the attempted murders of Carillo and Rascon. The trial court did not instruct the jury on the natural and probable consequences doctrine. Valenzuela accordingly is ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

We affirm the trial court's order denying Santos Valenzuela's petition for resentencing.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.

---

*People v. Samaniego* (2009) 172 Cal.App.4th 1148, and *People v. Nero* (2010) 181 Cal.App.4th 504—are inapposite.